Robert J. Cassity, Esq.
Nevada Bar No. 9779
Sydney R. Gambee, Esq.
Nevada Bar No. 14201
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada  89134
Tel: (702) 669-4600
Fax: (702) 669-4650
bcassity@hollandhart.com
srgambee@hollandhart.com

Stephen G. Topetzes (*pro hac vice*)
Theodore L. Kornobis (*pro hac vice*)
Stavroula E. Lambrakopoulos (*pro hac vice*)
K&L GATES LLP
1601 K Street, NW
Washington, D.C. 20006
Tel:  (202) 778-9000
stephen.topetzes@klgates.com
stavroula.lambrakopoulos@klgates.com
ted.kornobis@klgates.com

*Attorneys for Defendant Bradley C. Reifler and Relief Defendants*
*Forefront Partners, LLC, Forefront Capital Services, LLC,*
*and Port Royal-NCM, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case Number: 2:20-cv-00511-RFB-DJA |
| Plaintiff, | **SECOND AMENDED ANSWER ON BEHALF OF DEFENDANT BRADLEY C. REIFLER AND RELIEF DEFENDANTS FOREFRONT PARTNERS, LLC, FOREFRONT CAPITAL SERVICES, LLC, AND PORT ROYAL-NCM, LLC** |
| v. | |
| BRADLEY C. REIFLER, | |
| Defendant, | |
| And | |
| FOREFRONT PARTNERS, LLC, FOREFRONT CAPITAL SERVICES, LLC, and PORT ROYAL-NCM, LLC, | **DEMAND FOR JURY TRIAL** |
| Relief Defendants. | |

1

Defendant Bradley C. Reifler, and Relief Defendants Forefront Partners, LLC, Forefront Capital Services, LLC, and Port Royal-NCM, LLC (the "Forefront Entities" or the "Relief Defendants"), by and through their undersigned attorneys, hereby answer the Complaint of Plaintiff Securities and Exchange Commission ("SEC" or "Plaintiff") in the above action as follows, and reserve their rights to request dismissal of the Complaint on any and all grounds.

## INTRODUCTION

This litigation arises out of a series of complex business dealings involving Mr. Reifler, the Relief Defendants, and several business partners including Summit Trust Company ("Summit") and Mr. Steven Fickes, an insurance industry professional and the principal of Port Royal Reassurance Company SPC, Ltd. ("Port Royal"). These dealings involved the assets of a reinsurance trust portfolio associated with North Carolina Mutual Insurance Company ("NCM"), and the various business opportunities to which those assets were channeled for the benefit of the trust including the investment of some of the assets in Forefront Income Trust ("FIT"), a closed-end fund founded by Mr. Reifler, and a series of collateralized short-term loans and financings for several businesses including Forefront Partners. The subject business dealings also included a series of short-term loans by Summit to a telecommunications factoring business in which Mr. Reifler was involved, Forefront Talking Capital ("Talking Capital").

Summit and NCM earned income from a number of these deals and Summit became the trustee and custodian of the $34 million reinsurance trust. However, the valuable portfolio was significantly affected when concerns were raised by insurance regulators with respect to whether investments in the portfolio satisfied regulatory requirements applicable to insurance company reserve assets. The conduct of persons other than Mr. Reifler in reacting to those insurance regulatory concerns and in failing to properly manage the portfolio's assets caused the current reduction in the value of those assets. The Talking Capital deal was also marred by the theft of assets and misappropriation of business opportunities perpetrated by several of the owners of Talking Capital who left to form another, similar business. These circumstances

sparked a series of lawsuits, government investigations and bankruptcy proceedings, including lengthy and complex litigation brought by NCM and other lawsuits brought by Mr. Reifler to recover the Talking Capital stolen assets and funds.

Mr. Reifler never obtained any financial benefit, and did not profit, from these matters. Indeed, Mr. Reifler committed substantial sums to start and finance the operations of the Forefront entities, and he has spent the last few years as well as his remaining resources seeking to establish and sustain FIT, and to recover assets for the benefit of NCM, other FIT shareholders, and persons who loaned money to one or more Forefront entities. Throughout this process, the relationship between Mr. Reifler, Summit and Mr. Fickes devolved into a series of recriminations, accusations and finger-pointing as Summit, Mr. Fickes and others sought to disclaim any responsibility for their decisions and actions.

In the midst of this vortex, Plaintiff SEC now files its Complaint against Mr. Reifler, individually, and several of the Forefront entities as Relief Defendants. Plaintiff SEC seeks to hold Mr. Reifler individually accountable without taking into consideration the conduct of other persons who were responsible for the losses at issue. Grounding its allegations on a cherry-picked record, the SEC seeks to shoe-horn its misleading allegations into claims that Mr. Reifler engaged in federal securities fraud and breaches of fiduciary duty as an investment adviser. The SEC seeks relief in the form of a permanent injunction, as well as civil monetary penalties as to Mr. Reifler, and the disgorgement of purportedly "ill-gotten gains" by Mr. Reifler and the Relief Defendants.

The SEC focuses its claims on several transactions or instruments that it defines as securities: (1) short-term promissory notes held by Summit in the amount of $6 million for the purchase of telecommunications factoring opportunities through Talking Capital; (2) the redeployment of those assets, with the consent of Summit, into financing for other opportunities including a payment tied to the acquisition of the NCM reinsurance trust portfolio; (3) the deployment of assets from the NCM reinsurance trust portfolio to provide a $10 million loan to Forefront Partners, to seed FIT with a $10 million investment, and to make loans to other entities; and (4) the payment of a dividend to Forefront from the deployment or

investment of the reinsurance trust assets.  The SEC also alleges that Mr. Reifler was involved in creating false documents in an attempt to recast some of the NCM investments to address the concerns of insurance regulators.

Mr. Reifler and the Relief Defendants flatly deny that they engaged in any wrongdoing or committed securities fraud or breached any fiduciary duties.  Moreover, the SEC has failed to properly plead that the majority of the transactions at issue involve securities and, if so, that there were any misrepresentations by Mr. Reifler in connection with any securities transaction that were material.  Even if the short-term collateralized loan transactions do qualify as securities, the SEC will be unable to establish that Mr. Reifler acted with the requisite scienter to sustain its claims.  Further, Mr. Reifler individually did not serve as an investment adviser to either Summit or to NCM and thus did not owe any fiduciary duties to these entities or their stakeholders.  Importantly, neither Mr. Reifler nor any of the Relief Defendants obtained any ill-gotten gains or economic benefit from any of the transactions at issue in this litigation.  Under the recent ruling of the U.S. Supreme Court in *SEC v. Liu*, the SEC's claims for disgorgement against Mr. Reifler and the Relief Defendants cannot be sustained.  Mr. Reifler and the Relief Defendants deny that they engaged in any misconduct or any violations of the federal securities laws and reserve their rights to defend against these allegations and, at the appropriate time, seek the dismissal of these claims with prejudice.

## **GENERAL DENIALS**

Except as otherwise expressly recognized herein, Mr. Reifler and the Relief Defendants deny each and every allegation in the Complaint, including, without limitation, any allegations contained in the preamble, headings or subheadings of the Complaint. Mr. Reifler and the Relief Defendants reserve the right to seek to amend or supplement this Answer as may be necessary, and to seek the dismissal of any and all claims with prejudice. More particularly:

A.      The SEC's Complaint and each count thereof fail to state a claim against Mr. Reifler and Relief Defendants upon which relief can be granted.

B.      Mr. Reifler and the Relief Defendants did not by use of the means or instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale

of securities: (a) employ devices, schemes, or artifices to defraud; (b) make untrue statements of material fact or omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engage in acts, practices or courses of business which operated or would operate as a fraud or deceit. Most of the transactions at issue did not involve securities and no alleged misrepresentations were made in connection with any securities transaction. To the extent there were any securities transactions, Defendants endeavored in good faith to provide appropriate disclosures based on the information available at the time.

C.      The SEC's claims fail in whole or in part because any allegedly false statement or omission identified in the Complaint was not material.

D.      The SEC's claims that Mr. Reifler individually breached fiduciary duties to the Reinsurance Trust and/or Summit fail in whole or in part because Mr. Reifler did not owe any fiduciary duty to the Reinsurance Trust or to Summit.

E.      The SEC's Complaint and each count thereof fail to allege facts and fail to make a showing sufficient to support any granting of injunctive relief because Mr. Reifler did not violate any federal securities law and his history is inconsistent with the likelihood of any future violation of the securities laws.  Therefore, Plaintiff cannot establish there is a reasonable likelihood that Mr. Reifler would violate the securities laws in the absence of injunctive relief. The SEC's injunctive relief claim is further barred because the adverse effects of an injunction far outweigh any benefit from an injunction.

F.      The SEC's Complaint and each count thereof fail to allege facts and fail to make a showing sufficient to support the imposition of any civil penalties.

G.      The SEC's Complaint fails to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b).

H.      The relief sought by the SEC in whole or in part exceeds its lawful authority.

I.      The SEC's claims are barred, in whole or in part, because Mr. Reifler and the Relief Defendants acted in good faith at all material times and in conformity with all applicable

5

federal statutes, including the Securities Act of 1933 and the Securities Exchange Act of 1934, and all applicable rules and regulations promulgated thereunder.

J.   The SEC's claims fail in whole or in part because Mr. Reifler at all times acted in good faith and did not knowingly make a false or misleading statement.   Mr. Reifler reasonably relied upon available information concerning the opportunities presented for investment on behalf of the Reinsurance Trust and in reliance on the expertise and obligations of other persons including Mr. Steven Fickes.  Mr. Reifler's good faith and reasonable reliance negates any inference of scienter or any intent to deceive.

K.   The SEC's Complaint and each count thereof fail to allege facts and fail to make a showing sufficient to support an order of disgorgement because there is no evidence that Mr. Reifler and any of the Relief Defendants wrongfully obtained profits, received benefits or avoided losses by reason of the conduct alleged in the Complaint or that disgorgement is necessary for deterrence purposes.  Under the Supreme Court's decision in *SEC v. Liu*, the SEC's claim for equitable relief in the form of disgorgement must fail for lack of any net profits or economic gain obtained by Mr. Reifler or any of the Relief Defendants as a consequence of any violation of the federal securities laws, and the lack of authority for imposing joint and several liability on any of the defendants for such disgorgement.

## ANSWER TO SPECIFIC ALLEGATIONS

Mr. Reifler and the Relief Defendants incorporate the Introduction of this Answer as if fully set forth therein and answer each specific allegation as follows:

## JURISDICTION AND VENUE

1.   Mr. Reifler and the Relief Defendants admit that this Court has jurisdiction over federal actions brought pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)]; Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa(a)]; and Sections 209(d), 209(e )(1), and 214 of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-9(d), 80b-

9(e)(1), and 90b-14].   To the extent that the allegations in Paragraph 1 call for a legal conclusion, no answer is required.

2.     Mr. Reifler and the Relief Defendants admit that they have directly or indirectly, used the United States mail, interstate telephone communications and the facilities of the national securities markets. Mr. Reifler and the Relief Defendants deny the remaining allegations in this paragraph, except to the extent that the allegations constitute legal conclusions that do not require a response.

3.     Mr. Reifler and the Relief Defendants admit that certain of the transactions, acts, practices, and courses of business occurred within this judicial district to the extent that the Nevada-Chartered Company, refers to Summit Trust Company ("Summit") which served as the custodian and trustee to a Reinsurance Trust.  Mr. Reifler and the Relief Defendants deny the remaining allegations and, to the extent that the allegations in Paragraph 3 call for a legal conclusion, no answer is required.

4.     Mr. Reifler and the Relief Defendants admit that they entered into tolling agreements with the SEC to toll the running of any statute of limitations from September 10, 2019 through the date of the filing of this Complaint. Mr. Reifler and the Relief Defendants deny the remaining allegations and, to the extent that the allegations in Paragraph 4 call for a legal conclusion, no answer is required.

## SUMMARY

5.     Mr. Reifler avers that Forefront Talking Capital Investment, LLC ("Forefront Talking Capital") entered into an agreement with Summit to arrange for the financing by Summit of receivables of certain telecommunications companies ultimately in the form of six short-term promissory notes totaling $6 million (the "Notes) and that Forefront prepaid interest to Summit on these Notes in order to help Summit with short term cash flow problems.  Mr. Reifler and the Relief Defendants also aver that, while Forefront Talking Capital was seeking appropriate factoring opportunities in which to deploy the funds obtained from the Summit Notes, Summit agreed to modify the terms of its $6 million commitment in order to permit the use of the loan proceeds to acquire a reinsurance reserve portfolio associated with life insurance

policies issued by North Carolina Mutual ("NCM"), through the Relief Defendant Port Royal-NCM, LLC. Summit was later appointed custodian and trustee of the reserve portfolio valued at approximately $34 million (the "Reinsurance Trust"), thus gaining a new and significant trust client.  Mr. Reifler and the Relief Defendants admit that the Reinsurance Trust held the reserve portfolio for the benefit of NCM.   The allegations contained in Paragraph 5 constitute a misleading and inaccurate description of relevant facts and Mr. Reifler and the Relief Defendants deny all other factual allegations on that basis.  To the extent that the allegations in Paragraph 5 call for a legal conclusion, no answer is required.

6.      Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 6 of the Complaint.

7.      Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 7 of the Complaint.  Mr. Reifler denies that he was the investment adviser to the Reinsurance Trust, that he, individually, owed any fiduciary duty to the Reinsurance Trust and that he violated that duty in any way.  To the extent that the allegations in Paragraph 7 call for a legal conclusion, no answer is required.

8.      Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 8 of the Complaint.

9.      Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 9 of the Complaint.

10.      Mr. Reifler and the Relief Defendants specifically deny that they received any "ill-gotten" gains. Mr. Reifler and the Relief Defendants further deny all of the remaining allegations in Paragraph 10 of the Complaint.

11.      Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 11 of the Complaint, and to the extent that the allegations call for a legal conclusion, no answer is required.

12.      Mr. Reifler and the Relief Defendants aver that Paragraph 12 sets forth the SEC's characterization of this action as well as legal conclusions and does not purport to require a response from Mr. Reifler and the Relief Defendants. To the extent this paragraph

purports to contain factual assertions requiring a response, Mr. Reifler and the Relief Defendants deny the allegations contained therein.

## **DEFENDANT**

13.     Mr. Reifler and the Relief Defendants admit that Mr. Reifler is 60 years old, resides in New York, New York, is the founder of Relief Defendant Forefront Partners. Mr. Reifler avers that the SEC-registered investment adviser with which he has been associated since 2014 is Forefront Capital Advisers, which is not a party to this action. Mr. Reifler and the Relief Defendants deny the remaining factual allegations in Paragraph 13 of the Complaint.

14.     Mr. Reifler and the Relief Defendants admit the allegations in Paragraph 14.

15.     Mr. Reifler and the Relief Defendants admit the allegations in Paragraph 15 of the Complaint.

16.     Mr. Reifler and the Relief Defendants admit the allegations in Paragraph 16 of the Complaint.

## **RELIEF DEFENDANTS**

17.     Mr. Reifler and the Relief Defendants admit the allegations in Paragraph 17.

18.     Mr. Reifler and the Relief Defendants admit the allegations in Paragraph 18.

19.     Mr. Reifler and the Relief Defendants admit that Port-Royal-NCM is a Delaware LLC with its principal office and place of business in New York, New York.  Mr. Reifler and the Relief Defendants deny the remaining factual allegations in Paragraph 19.

## **FACTS**

20.     Mr. Reifler and the Relief Defendants admit that Mr. Reifler in or about 2009 established several affiliated financial services entities that did business under the name of Forefront Capital or other variations involving "Forefront" that were involved in asset management, investment banking and investment advisory services but deny the allegations that these entities "purported" to provide such services.

21.     Mr. Reifler and the Relief Defendants admit that certain Forefront Capital businesses "operated under various names as separate LLCs."  Mr. Reifler and the Relief

9

Defendants lack knowledge or information sufficient to respond to the remaining allegations in Paragraph 21 of the Complaint, and such allegations are accordingly denied.

22.     Mr. Reifler and the Relief Defendants admit the allegations in Paragraph 22 of the Complaint, except with respect to the current status of Forefront Partners and Forefront Capital Services which essentially are no longer doing business.

23.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 23 of the Complaint, except that Mr. Reifler admits that he is the founder and CEO of Forefront Partners.

24.     Mr. Reifler and the Relief Defendants lack knowledge or information sufficient to respond to the allegations in Paragraph 24 of the Complaint, and such allegations are accordingly denied.

25.     Mr. Reifler denies that he was the sole member of Forefront Talking Capital and that he controlled its bank accounts, but he admits the remaining factual allegations in Paragraph 25 of the Complaint to the extent the Nevada-Chartered Company referenced is Summit. The Relief Defendants lack knowledge or information sufficient to respond to the allegations in Paragraph 25 of the Complaint, and such allegations are accordingly denied.

26.     Mr. Reifler and Relief Defendant Forefront Partners admit that an agreement titled "Investment Agreement" was executed by Summit and by Mr. Reifler on behalf of Forefront Partners. Mr. Reifler and the Relief Defendant Forefront Partners deny that the transaction was an "investment" by Summit.  Mr. Reifler and Relief Defendant Forefront Partners lack knowledge or information sufficient to respond to the remaining allegations in Paragraph 26 of the Complaint and such allegations are accordingly denied. Relief Defendants Forefront Capital Services and Port Royal-NCM lack knowledge or information sufficient to respond to the allegations in Paragraph 26 of the Complaint and such allegations are accordingly denied.

27.     Mr. Reifler and the Relief Defendants aver that the Investment Agreement speaks for itself and that no further answer is required.  To the extent any portion of Paragraph 27 alleges that Mr. Reifler made "representations" other than as set forth in the Investment

Agreement, Mr. Reifler and the Relief Defendants deny such allegations.  Further, to the extent the allegations in Paragraph 27 call for a legal conclusion, no answer is required.

28.     Mr. Reifler and Relief Defendant Forefront Partners admit that notes with the name "Forefront Partners" were issued to Summit and admit the second sentence of Paragraph 28.  Mr. Reifler and Relief Defendant Forefront Partners otherwise deny the factual allegations in Paragraph 28, including the characterization of the transaction as an "investment".  Relief Defendants Forefront Capital Services and Port Royal-NCM lack knowledge or information sufficient to respond to the factual allegations in Paragraph 28 of the Complaint, and such allegations are accordingly denied.

29.     Mr. Reifler and Relief Defendant Forefront Partners admit the factual allegations in Paragraph 29 of the Complaint and aver that the document speaks for itself.  Relief Defendants Forefront Capital and Port Royal-NCM lack knowledge or information sufficient to respond to the factual allegations in Paragraph 29, and such allegations are accordingly denied.

30.     Mr. Reifler and the Relief Defendant Forefront Partners admit the allegations in Paragraph 30 of the Complaint, except the characterizations that the President of Summit "took exception" to the notes, which they deny.  Relief Defendants Forefront Capital Services and Port Royal-NCM lack knowledge or information sufficient to respond to the allegations in Paragraph 30 of the Complaint and such allegations are accordingly denied.

31.     Mr. Reifler and the Relief Defendant Forefront Partners admit the allegations in Paragraph 31 of the Complaint, except the characterization that Summit "felt uncomfortable," which they deny.  Relief Defendants Forefront Capital Services and Port Royal-NCM lack knowledge or information sufficient to respond to the allegations in Paragraph 31 of the Complaint and such allegations are accordingly denied.

32.     Mr. Reifler and the Relief Defendant Forefront Partners admit the allegations in Paragraph 32 of the Complaint.  Relief Defendants Forefront Capital Services and Port Royal-NCM lack knowledge or information sufficient to respond to the allegations in Paragraph 32 of the Complaint and such allegations are accordingly denied.

33.     Mr. Reifler and the Relief Defendants lack knowledge or information sufficient to respond to the allegations in Paragraph 33 of the Complaint and such allegations are accordingly denied.

34.     Mr. Reifler and the Relief Defendants deny the characterization of the February 26, 2015, document as a "Letter of Intent."  They otherwise admit the factual allegations contained in the first sentence of Paragraph 34, and deny the factual allegations in the second sentence.

35.     Mr. Reifler and Relief Defendant Forefront Partners state that Summit consented to a redeployment of its $6 million in financing extended to Forefront Talking Capital for financing of the acquisition of the NCM Reserve Portfolio while Talking Capital was awaiting factoring opportunities to which the financing that had been received from Summit could be deployed.  With Summit's knowledge, the funds were redeployed to Talking Capital at a later date.  Mr. Reifler and Relief Defendant Forefront Partners deny the remaining factual allegations.  Relief Defendants Forefront Capital Services and Port Royal-NCM lack knowledge or information sufficient to respond to the allegations in Paragraph 35 of the Complaint, and all allegations are accordingly denied.

36.     Mr. Reifler and Relief Defendant Forefront Partners deny the allegations in Paragraph 36 of the Complaint including that Mr. Reifler had any individual obligation to repay Summit the $6 million it loaned to Forefront Talking Capital.  Relief Defendants Forefront Capital Services and Port Royal-NCM lack knowledge or information sufficient to respond to the allegations in Paragraph 36 of the Complaint, and the allegations are accordingly denied.

37.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 37 of the Complaint.

38.     Mr. Reifler and Relief Defendant Forefront Partners state that the Investment Agreement and the referenced email speak for themselves and deny the remaining factual allegations.  Relief Defendants Forefront Capital Services and Port Royal-NCM lack knowledge or information sufficient to respond to the allegations in Paragraph 38 of the Complaint, and the allegations are accordingly denied.

39.     Mr. Reifler and the Relief Defendants deny the factual allegations and, to the extent that Paragraph 39 calls for a legal conclusion, no answer is required.

40.     Mr. Reifler and the Relief Defendants deny the factual allegations and, to the extent that Paragraph 40 calls for a legal conclusion, no answer is required.

41.     Mr. Reifler and the Relief Defendants deny the factual allegations and, to the extent that Paragraph 41 calls for a legal conclusion, no answer is required.

42.     Mr. Reifler and the Relief Defendants aver that the referenced email speaks for itself, deny the factual allegations and, to the extent that Paragraph 42 calls for a legal conclusion, no answer is required.

43.     Mr. Reifler and the Relief Defendants deny the factual allegations and, to the extent that Paragraph 43 calls for a legal conclusion, no answer is required.

44. Mr. Reifler and the Relief Defendants admit the existence of the referenced February 27, 2015 and March 9, 2015 wires, and deny the remaining factual allegations  and, to the extent that Paragraph 44 calls for a legal conclusion, no answer is required.

45.     Mr. Reifler and the Relief Defendants deny the factual allegations and, to the extent that Paragraph 45 calls for a legal conclusion, no answer is required. Mr. Reifler avers that Summit and Steven Fickes ("Fickes"), the insurance industry professional and the principal of Port Royal Reassurance Company SPC, Ltd. ("Port Royal"), an entity engaged to oversee the NCM reinsurance portfolio, engaged in discussions concluding with Summit's consent to re-deploy the loan proceeds from the Notes issued by Forefront Talking Capital for the acquisition by Port Royal of the NCM reinsurance portfolio which would be held by Summit as trustee and custodian of the assets.   The loan proceeds were redeployed to finance the acquisition of the NCM reinsurance portfolio during a period when Talking Capital had not yet sourced sufficient factoring opportunities to which the loan proceeds would be applied and that Summit benefited from that transaction to which it consented, and that the loan proceeds were subsequently re-directed to the factoring opportunities at Talking Capital, again with Summit's consent.

/ / /

46.     Mr. Reifler and the Relief Defendants deny the factual allegations and, to the extent that Paragraph 46 calls for a legal conclusion, no answer is required.

47.     Mr. Reifler and the Relief Defendants deny the factual allegations and, to the extent that Paragraph 47 calls for a legal conclusion, no answer is required.

48.     Mr. Reifler and the Relief Defendants deny the factual allegations and, to the extent that Paragraph 48 calls for a legal conclusion, no answer is required.

49.     Mr. Reifler and the Relief Defendants deny the factual allegations and, to the extent that Paragraph 49 calls for a legal conclusion, no answer is required.

50.     Mr. Reifler and the Relief Defendants deny the factual allegations and, to the extent that Paragraph 50 calls for a legal conclusion, no answer is required. Mr. Reifler and the Relief Defendants state further that the Notes were not securities within the meaning of the federal securities laws and that there was no representation made in connection with a securities transaction.

51.     Mr. Reifler and the Relief Defendants deny the factual allegations and, to the extent that Paragraph 51 calls for a legal conclusion, no answer is required.

52.     Mr. Reifler and the Relief Defendants lack knowledge or information sufficient to respond to the allegations in Paragraph 52 of the Complaint and such allegations are accordingly denied.

53.     Mr. Reifler and the Relief Defendants lack knowledge or information sufficient to respond to the allegations in Paragraph 53 of the Complaint and such allegations are accordingly denied.

54.     Mr. Reifler and the Relief Defendants deny the factual allegations in Paragraph 54 of the Complaint.

55.     Mr. Reifler and the Relief Defendants deny the factual allegations in Paragraph 55 including that the Notes were securities subject to the antifraud provisions of the federal securities statutes and to the extent that a legal conclusion is called for, no answer is required.

56.     Mr. Reifler and the Relief Defendants deny the factual allegations in Paragraph 56 and to the extent that a legal conclusion is called for, no answer is required.

57.     Mr. Reifler and the Relief Defendants deny the factual allegations in Paragraph 57 and to the extent that a legal conclusion is called for, no answer is required.

58.     Mr. Reifler and the Relief Defendants deny the factual allegations in Paragraph 58 and to the extent that a legal conclusion is called for, no answer is required.

59.     Mr. Reifler and the Relief Defendants state that Mr. Reifler and Forefront Partners, in late 2014, engaged in discussions with Mr. Fickes for the acquisition through an entity controlled by Mr. Fickes, Port Royal, of the NCM reserve portfolio from its owner, Markel Bermuda, Ltd. ("Markel"), but deny engaging in any discussions to obtain "investment control" and deny the remaining allegations in Paragraph 59.

60.     Mr. Reifler and the Relief Defendants incorporate their response to Paragraph 59 herein and further state that the contemplated acquisition of the $34 million reserve portfolio from Markel by Port Royal and deployment of the portfolio also contemplated the expertise and approval of Mr. Fickes who would ensure, as a qualified insurance actuary, that the proposed opportunities met regulatory requirements as well as the requirement that Port Royal maintain reserves equal to the amount of death benefits that were estimated to be paid to the beneficiaries of the NCM life insurance policies, based on actuarial calculations.  Mr. Reifler and the Relief Defendants further state that the parties agreed that any amounts in the portfolio (including returns) above the statutory reserves and the servicing fees were considered profits to Port Royal, which would be split with Forefront Partners pursuant to a profit-share arrangement.  Mr. Reifler and the Relief Defendants further state that they relied upon the expertise of Mr. Fickes at all times.  Mr. Reifler and the Relief Defendants deny the remaining allegations in Paragraph 60 of the Complaint.

61.     Mr. Reifler and the Relief Defendants incorporate their response to Paragraph 60 herein and state that the Reinsurance Trust Agreement, to which they were not parties, speaks for itself.  Mr. Reifler and the Relief Defendants lack knowledge or information sufficient to respond to the allegations in Paragraph 61, and accordingly the allegations are denied.

62.     Mr. Reifler and the Relief Defendants incorporate their response to Paragraph 60 herein and state that the Reinsurance Trust Agreement, to which they were not parties, speaks

for itself.  Mr. Reifler and the Relief Defendants lack knowledge or information sufficient to respond to the allegations in Paragraph 62, and accordingly the allegations are denied.

63.    Mr. Reifler and the Relief Defendants incorporate their response to Paragraph 60 herein and state that the Reinsurance Trust Agreement, to which they were not parties, speaks for itself.  Mr. Reifler and the Relief Defendants further state that Summit was designated as the custodian and trustee of the NCM reserve portfolio and that the assets of the NCM reserve portfolio were transferred to Summit as custodian of the funds. Mr. Reifler and the Relief Defendants lack knowledge or information sufficient to respond to the allegations in Paragraph 63, and accordingly the allegations are denied.

64.    Mr. Reifler and the Relief Defendants state that Port Royal was required to finance the acquisition of the reserve portfolio from Markel with $5 million to be added to the assets of the portfolio but deny that they obtained "investment control" over the assets which were maintained by Summit as custodian and trustee.  Mr. Reifler and the Relief Defendants deny the remaining factual allegations in Paragraph 64 of the Complaint.

65.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 65 of the Complaint.

66.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 66 of the Complaint, and in particular, Mr. Reifler denies that he was ever designated to serve as the investment adviser to the Reinsurance Trust.  Mr. Reifler states that the Reinsurance Trust Agreement ("Trust Agreement"), to which neither he nor any of the Relief Defendants are parties or executed, purports to appoint Stamford Brook as the investment manager, but Stamford Brook was never fully launched as an entity and Mr. Reifler ultimately decided that neither he nor any entity that he controlled would serve as a formal investment adviser to the Reinsurance Trust.  Mr. Reifler further states that neither he nor any entity that he controlled received any investment management fees.

67.    Mr. Reifler and the Relief Defendants incorporate their response to Paragraph 66 to this response and deny the allegations in Paragraph 67 of the Complaint.

/ / /

68. Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 68 of the Complaint.

69. Mr. Reifler admits that a portion of the Reinsurance Trust Assets were invested in the Forefront Income Trust ("FIT"), a closed-end fund, to which non-party Forefront Capital Advisors, LLC, served as investment adviser. Mr. Reifler also admits that $10 million of the Reinsurance Trust Assets were deployed as a loan to Forefront Partners in the form of a note, with the consent of Mr. Fickes. Mr. Reifler and the Relief Defendants deny the remaining allegations in Paragraph 69 of the Complaint.

70. Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 70 of the Complaint and to the extent this calls for a legal conclusion, no answer is required.

71. Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 71 of the Complaint and to the extent this calls for a legal conclusion, no answer is required.

72. Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 72 of the Complaint and to the extent this calls for a legal conclusion, no answer is required.

73. Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 73 of the Complaint and to the extent this calls for a legal conclusion, no answer is required. Mr. Reifler also states that he relied entirely on the expertise of Mr. Fickes in considering any investments that he proposed for the Reinsurance Trust assets and the consent of Mr. Fickes and Summit, as the Trustee, in connection with any investment. Neither Mr. Reifler nor the Relief Defendants were parties to the Trust Agreement and lack knowledge and information sufficient to respond to the allegations in Paragraph 73 which are accordingly denied.

74. Mr. Reifler and the Relief Defendants incorporate herein their response to Paragraph 73 of the Complaint and deny the allegations in paragraph 74 of the Complaint.

75. Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 75 of the Complaint.

76. Mr. Reifler and the Relief Defendants admit that the Reinsurance Trust had approximately $34 million in assets that could be invested, and that $10 million of these funds were loaned by the Trust to Forefront Partners in the form of a short-term note, another $10

million was invested in FIT, for which Mr. Reifler serves as Chairman of the Board of Trustees and the CEO of FIT's registered investment adviser, and additional funds were invested in other opportunities including a bridge loan to Symmetry Property Development ("Symmetry"), a real-estate entity focused on hotel development projects.   To the extent any of the opportunities were proposed by Mr. Reifler, they were reviewed and approved by Mr. Fickes. Mr. Reifler and the Relief Defendants deny the remaining allegations in Paragraph 76 of the Complaint and to the extent this calls for a legal conclusion, no answer is required.

77.   Mr. Reifler and the Relief Defendants admit that the Reinsurance Trust provided a $10 million loan to Forefront Partners in the form of a short-term promissory note, with the approval of Mr. Fickes and that the terms of the note are stated on the document which speaks for itself.  Mr. Reifler and the Relief Defendants deny the remainder of the factual allegations in Paragraph 77 of the Complaint.

78.   Mr. Reifler and Relief Defendant Forefront Partners admit that Forefront Partners issued a note to the Reinsurance Trust in exchange for a loan by the Reinsurance Trust in the amount of $10 million.  Mr. Reifler and Relief Defendant Forefront Partners deny the remaining allegations in paragraph 78 of the Complaint.  Relief Defendants Forefront Capital Services and Port Royal-NCM lack knowledge or information sufficient to respond to the allegations in Paragraph 78 of the Complaint, and the allegations are accordingly denied.

79.   Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 79 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

80.   Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 80 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

81.   Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 81 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

82.   Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 82 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required. 83.

83.   Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 83 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

84.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 84 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

85.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 85 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

86.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 86 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

87.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 87 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

88.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 88 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.  Mr. Reifler and the Relief Defendants further state that the Forefront Partners $10 million note was not a security and there was no offer or sale of a security subject to the federal securities laws.

89.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 89 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

90.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 90 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.  Mr. Reifler and the Relief Defendants further state that Mr. Reifler proposed to Mr. Fickes that the Reinsurance Trust loan the amount of $10 million to Forefront Partners as an opportunity that would have provided benefit to the Reinsurance Trust with payments of interest on the note and that the decision to loan the funds from the portfolio of the Reinsurance Trust was made by Mr. Fickes with Summit's awareness.

91.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 91 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

92.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 92 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

93.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 93 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

/ / /

94.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 94 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

95.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 95 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

96.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 96 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

97.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 97 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

98.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 98 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

99.     Mr. Reifler admits to the allegations in Paragraph 99 of the Complaint.  The Relief Defendants lack knowledge or information sufficient to respond to the allegations in Paragraph 99 and accordingly the allegations are denied.

100.     Mr. Reifler admits that he proposed to Mr. Fickes and that Mr. Fickes agreed to invest $10 million of the Reinsurance Trust's assets in FIT, and that Mr. Reifler served as the Chairman of FIT's Board of Trustees at the time.  Mr. Reifler denies the remaining factual allegations in Paragraph 100 of the Complaint.  The Relief Defendants lack knowledge or information sufficient to respond to the allegations in Paragraph 100 and accordingly the allegations are denied.

101.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 101 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

102.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 102 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

103.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 103 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.  Mr. Reifler further states that at year-end of 2015, FIT owed a profit dividend in the amount of $495,048.73 as an investment return that would have been properly paid to Forefront.  The SEC has mischaracterized the nature of the dividend and its allegations are misleading.  Mr. Reifler

and the Relief Defendants deny that the dividend was "misappropriated" as it represented the profits on the investment of the reserve portfolio and thus properly belonged to Port Royal to be used to pay Forefront its interest and then split 60/40 with Forefront, in accordance with Section 5 of the Reinsurance Trust Agreement.  The dividend was promptly redeployed to a new Forefront Partners note at 10% interest after it was received.

104.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 104 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

105.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 105 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

106.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 106 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

107.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 107 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

108.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 108 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.  Mr. Reifler and the Relief Defendants aver that, to the extent the SEC's allegations refer to Mr. Fickes as "Individual-1", Mr. Reifler, at all times, apprised Mr. Fickes of various opportunities for investment of Reinsurance Trust assets and relied upon Mr. Fickes' expertise in determining whether these opportunities met the requirements of insurance regulators.  Mr. Reifler states that in or around July through December 2015, he discussed with Mr. Fickes potential options for realigning the portfolio in order to comply with North Carolina law and addressing limits on concentrations of investments.  Mr. Reifler and the Relief Defendants deny that they engaged in any conduct or practice that was improper or a violation of any law.

109.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 109 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

110.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 110 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

/ / /

111.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 111 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required. Mr. Reifler further denies that he engaged in any wrongful or illegal conduct including in forging documents and creating fictitious documentation as alleged by the SEC.

112.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 112 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

113.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 113 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

114.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 114 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

115.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 115 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

116.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 116 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

117.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 117 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

118.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 118 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

119.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 119 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.  Mr. Reifler admits that $1.1 million was paid by Symmetry to the Reinsurance Trust.

120.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 120 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.  Mr. Reifler further states that any statements attributed to him have been taken out of their context and described in a misleading way.

121.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 121 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.  Mr.

Reifler further states that he did not cause any forged or false documents to be created and/or disseminated to Summit, the Reinsurance Trust, or to anyone else.

122.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 122 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

123.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 123 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

124.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 124 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

125.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 125 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.  Mr. Reifler further states that he has worked tirelessly and used his personal resources to recover funds on behalf of the Reinsurance Trust and Summit, including through the bringing of litigation and cooperating with regulators.  To this point, the Reinsurance Trust has received over $7 million in repayments or dividends from FIT with the balance of approximately $3 million in the process of repayment. In 2015-2016, Forefront Partners also paid the Reinsurance Trust approximately $1.5 million for servicing and death benefits, reducing the amount of reserves that needed to be held in the portfolio.  Additional funds paid to NCM include the repayment of $1.1 million of the Symmetry loan and about $700,000 in incentive fees.  These recoveries exceed $10.5 million.  In addition, Mr. Reifler, in coordination with NCM, obtained and filed a financing statement on form UCC-1 in favor of NCM in the amount of $10 million with respect to one of the loans made on behalf of the Reinsurance Trust.  There are additional sources of potential recoveries that are outstanding from unpaid collateralized loans and estimated recoveries from pending litigation.

126.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 126 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.  Mr. Reifler and the Relief Defendants deny that they obtained any investor funds without any basis or that they have possession of any funds that belong to the investors.

/ / /

127.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 127 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required. To the extent these allegations refer to the $10 million short-term note that was issued to the Reinsurance Trust in connection with its loan to Forefront Partners, this transfer of funds was in accordance with a legally enforceable promissory note entered into by the Reinsurance Trust with the knowledge and consent of Mr. Fickes and Summit.

128.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 128 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

129.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 129 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required. To the extent that these allegations refer to the dividend paid to Port Royal for distribution to Forefront, the dividend was earned legitimately by Forefront in accordance with the Trust Agreement and does not constitute "ill-gotten gains" that were improperly transferred.

130.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 130 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

131.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 131 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.  Mr. Reifler and the Relief Defendants aver that they received no ill-gotten gains or proceeds of any fraud and did not obtain any net profits from any of the transactions at issue.

132.     Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 132 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

133.    Mr. Reifler and the Relief Defendants admit that the $495,048 FIT dividend was transferred to an account in the name of Port Royal-NCM but aver that this constituted a proper distribution of funds to which Forefront Partners were entitled to receive under the terms of the Trust Agreement.  Mr. Reifler and the Relief Defendants deny the remaining allegations in Paragraph 133 and to the extent that it calls for a legal conclusion, no answer is required.

134.    Mr. Reifler and the Relief Defendants admit the allegations in Paragraph 134 of the Complaint.

135.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 135 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.

136.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 136 of the Complaint and to the extent that it calls for a legal conclusion, no answer is required.  Mr. Reifler and the Relief Defendants aver that they received no ill-gotten gains or proceeds of any fraud and did not obtain any net profits from any of the transactions at issue.

137.    Mr. Reifler and Relief Defendants repeat and reassert their answers to Paragraphs 1 through 136 of the Complaint as if fully set forth herein.

138.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 138 of the Complaint.  Further, to the extent that the allegations in Paragraph 138 call for a legal conclusion, no answer is required.

139.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 139 of the Complaint.  Further, to the extent that the allegations in Paragraph 139 call for a legal conclusion, no answer is required.

140.    Mr. Reifler and Relief Defendants repeat and reassert their answers to Paragraphs 1 through 139 of the Complaint as if fully set forth herein.

141.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 141 of the Complaint.  Further, to the extent that the allegations in Paragraph 141 call for a legal conclusion, no answer is required.

142.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 142 of the Complaint.  Further, to the extent that the allegations in Paragraph 142 call for a legal conclusion, no answer is required.

143.    Mr. Reifler and Relief Defendants repeat and reassert their answers to Paragraphs 1 through 142 of the Complaint as if fully set forth herein.

144.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 144 of the Complaint.  Further, to the extent that the allegations in Paragraph 144 call for a legal conclusion, no answer is required.

/ / /

145.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 145 of the Complaint.  Further, to the extent that the allegations in Paragraph 145 call for a legal conclusion, no answer is required.

146.    Mr. Reifler and the Relief Defendants deny the allegations in Paragraph 146 of the Complaint.  Further, to the extent that the allegations in Paragraph 146 call for a legal conclusion, no answer is required.

WHEREFORE, Mr. Reifler and the Relief Defendants respectfully demand judgment in their favor and such other and further relief as the Court deems appropriate.

## DEMAND FOR TRIAL BY JURY

Defendants hereby request a trial by jury as to all issues so triable raised by the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Reifler and the Relief Defendants respectfully request that the Court enter an Order:

1.    Entering judgment in favor of Mr. Reifler and the Relief Defendants and against the SEC on all alleged claims for relief;

2.    Dismissing the Complaint with prejudice; and

3.    Granting such other and further relief as the Court deems just and proper.

DATED this 21st day of August, 2020.

*/s/ Sydney R. Gambee*
Robert J. Cassity, Esq.
Sydney Gambee, Esq.
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada  89134

Stephen G. Topetzes (*pro hac vice*)
Theodore L. Kornobis (*pro hac vice*)
Stavroula E. Lambrakopoulos (*pro hac vice*)
K&L GATES LLP
1601 K Street, N.W.
Washington, D.C.  20006-1600

*Attorneys for Defendant Bradley C. Reifler, and Relief Defendants Forefront Partners, LLC, Forefront Capital Services, LLC, and Port-Royal-NCM, LLC*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of August, 2020, a true and correct copy of the foregoing **SECOND AMENDED ANSWER ON BEHALF OF DEFENDANT BRADLEY C. REIFLER AND RELIEF DEFENDANTS FOREFRONT PARTNERS, LLC, FOREFRONT CAPITAL SERVICES, LLC, AND PORT ROYAL-NCM, LLC** was served by the following method(s):

☒ Electronic: by submitting electronically for filing and/or service with the United States District Court, District of Nevada's e-filing system and served on counsel electronically in accordance with the E-service list to the following email addresses:

Christopher E. Martin, Esq.
Polly Atkinson, Esq.
Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO 80294
MartinC@SEC.GOV
AtkinsonP@SEC.GOV

*Attorneys for Plaintiff Securities and Exchange Commission*

*/s/ Joyce Heilich*
An Employee of HOLLAND & HART LLP

15264345_v1 109590.0001

27